## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICK HENRY HILL II, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-24-564-G |
| | ) |
| | ) |
| WILLIAM "CHRIS" RANKINS, | ) |
| Warden, | ) |
| | ) |
| Respondent.[1] | ) |

### ORDER

Petitioner Patrick Henry Hill II, a state prisoner appearing pro se, has filed a Petition for Writ of Habeas Corpus (Doc. No. 1) challenging his state-court criminal conviction pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b)(1), the matter was referred to Magistrate Judge Chris M. Stephens for preliminary review.

*I.    Procedural Background*

As alleged in the Petition and explained in the March 27, 2025 Report and Recommendation issued by Judge Stephens ("R. & R.," Doc. No. 13), Petitioner challenges his 2002 criminal conviction in the District Court of Comanche County, Oklahoma. *See State v. Hill*, No. CF-2002-121 (Comanche Cnty. Dist. Ct.).

In the state-court criminal proceeding, Petitioner was charged with the death of "D.S.," his girlfriend's ten-month-old son. Specifically, Petitioner was charged with first-

---

[1] The Clerk of Court is directed to terminate the additional respondent currently listed on the case docket. *See* R. 2(a), R. Governing § 2254 Cases in U.S. Dist. Cts.

degree manslaughter, in violation of title 21, section 711 of the Oklahoma Statutes, for

causing the death of D.S. "while in a heat of passion and without a design to effect death,

by shaking said [D.S.], causing mortal wounds."  Resp't's Ex. 5, Pet'r's Mot. to Withdraw

Plea at 1 (Doc. No. 11-5); *see* Okla Stat. tit. 21, § 711(2).  Petitioner entered a blind plea

of guilty[2] to the charge.  Pet. at 2.  On November 21, 2002, the trial court convicted

Petitioner on the charge and sentenced him to a term of life imprisonment.  *Id.*; R. & R. at

4 n.3.

Petitioner did not file a motion to withdraw his guilty plea or otherwise seek to

appeal the conviction.  Pet. at 2.  In March of 2003, Petitioner filed a pro se motion for

judicial review of the sentence pursuant to title 22, section 982a of the Oklahoma Statutes,

which the trial court denied on March 13, 2003.  *Id.*

On April 24, 2013, Petitioner, appearing through counsel, filed in the trial court an

application for postconviction relief, a motion to withdraw his guilty plea, and motions

requesting an evidentiary hearing.  *See id.* at 3; R. & R. at 2.  The trial court conducted a

hearing on November 18, 2013, at which Stephen K. Ofori, MD, testified as an expert

witness for Petitioner.  *See* Pet. at 1; Resp't's Ex. 8, Trial Ct. Order of Sept. 24, 2021, at 3

(Comanche Cnty. Dist. Ct.) (Doc. No. 11-8).  On January 31, 2017, the trial court found

that, due to the possibility of newly discovered evidence, an additional evidentiary hearing

should be conducted.  *See* Pet. at 2-3.  A second evidentiary hearing was held on August

16, 2021, at which Dr. Ofori provided supplemental testimony.  *Id.* at 4.

---

[2] A blind plea is "a plea of guilty without any guarantee as to what the sentence will be."
*Pickens v. State*, 158 P.3d 482, 484 (Okla. Crim. App. 2007) (Lumpkin, J., dissenting).

On September 24, 2021, the trial court denied Petitioner's postconviction application and motion to withdraw the guilty plea, concluding that the court was "not persuaded the evidence presented justifies Petitioner's request to have [h]is conviction, which resulted from a voluntary plea of guilty, set aside." Trial Ct. Order of Sept. 24, 2021, at 4. The court further held that it was "not persuaded that Petitioner's sentence . . . should be set aside or modified at this time." *Id.*

On September 12, 2022, Petitioner filed an application in the trial court to appeal this disposition out of time. Pet. at 5; *see also* Okla. Stat. tit. 22, § 1087 (prescribing a 30-day deadline to commence a postconviction appeal). The trial court issued a recommendation that Petitioner's request be granted, and in February 2023 the Oklahoma Court of Criminal Appeals ("OCCA") ruled that Petitioner would be allowed to pursue his postconviction appeal. Pet. at 5; *see Hill v. State*, No. PC-2023-34 (Okla. Crim. App.). On June 2, 2023, the OCCA affirmed the trial court's denial of postconviction relief. Pet. at 5; *see Hill v. State*, No. PC-2023-244 (Okla. Crim. App.).

Petitioner sought a writ of certiorari from the U.S. Supreme Court. *See* Pet. at 7. His petition was denied on February 20, 2024. *Hill v. Oklahoma*, 144 S. Ct. 834 (2024) (mem.).

II.     *The Habeas Corpus Proceeding*

On May 24, 2024, Petitioner filed the instant habeas corpus action, raising five grounds for relief. *See* Pet. at 11-28, 30; *Marsh v. Soares*, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000).

Respondent, Oklahoma State Reformatory Warden William "Chris" Rankins, filed a Motion to Dismiss and supporting Brief (Doc. Nos. 10, 11), seeking to dismiss the Petition on two bases. First, Respondent argued that the Petition is time barred pursuant to 28 U.S.C. § 2244(d)(1). *See* Resp't's Br. at 14-29. Second, Respondent asserted that, in the alternative, some or all claims of the Petition are arguably subject to dismissal because Petitioner did not exhaust available state-court remedies on those claims. *See id.* at 30-31; 28 U.S.C. § 2254(b)(1)(A). Petitioner filed a Response in opposition (Doc. No. 12).

III.    *The Report and Recommendation*

In the R. & R. issued on March 27, 2025, Judge Stephens thoroughly outlined the relevant procedural history and the parties' arguments in this matter. Judge Stephens concluded that the Petition was untimely filed and that Petitioner was not entitled to rely upon his claim of actual innocence as a "gateway" to overcome his "failure to abide by the federal statute of limitations" and have his federal habeas claims considered by the Court. R. & R. at 4-18; *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021). The R. & R. recommended that Respondent's Motion to Dismiss be granted on this basis and therefore found it unnecessary to address the exhaustion issue. *See* R. & R. at 17-18 & n.6.

On April 14, 2025, Petitioner filed a timely Objection to the R. & R. (Doc. No. 14). Respondent did not respond to the Objection. Pursuant to controlling authority, the Court reviews de novo the portions of the R. & R. to which specific objections have been made. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

4

IV.     *Discussion*

A.  *Whether the Habeas Petition Was Timely Filed*

As noted by Judge Stephens, "[a] 1-year period of limitation" applies to any "application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).

1.  *28 U.S.C. § 2244(d)(1)(A)*

a.  *The Report and Recommendation*

The one-year limitations period generally runs from the date on which the state-court judgment became "final" under 28 U.S.C. § 2244(d)(1)(A). *Id.* § 2244(d)(1)(A); *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). The R. & R. found that Petitioner's November 21, 2002 conviction became final under § 2244(d)(1)(A) on December 2, 2002. *See* R. & R. at 4-5 (citing *Davis v. Bridges*, No. 22-6107, 2024 WL 140026, at *4 (10th Cir. Jan. 12, 2024) ("[I]f defendants do not move within ten days after the entry of judgment and sentence to withdraw their guilty plea, the defendants' convictions become final for purposes of § 2244(d)(1)(A) after the ten days have expired.")); Okla. Ct. Crim. App. R. 1.5. The R. & R. further found that under § 2244(d)(1)(A) Petitioner's one-year deadline to file a 28 U.S.C. § 2254 habeas petition began running the next day and expired on December 3, 2003. *See* R. & R. at 5.

In reaching this conclusion, Judge Stephens noted that the one-year limitation period is paused, or tolled, "during the time the petitioner's 'properly filed' application for state postconviction relief 'is pending.'" *Day v. McDonough*, 547 U.S. 198, 201 (2006) (quoting 28 U.S.C. § 2244(d)(2)). Judge Stephens concluded that such statutory tolling did not

apply in this case because Petitioner's postconviction application was not filed until April of 2013.  *See* R. & R. at 5 & n.4; *Davis*, 2024 WL 140026, at *4 (explaining that only postconviction applications filed within the one-year limitation period will toll that period).[3]

Further, because the one-year period began on December 3, 2002, and expired on December 3, 2003, and because the Petition was not filed until May 24, 2024, the magistrate judge concluded that the Petition was not timely filed pursuant to § 2244(d)(1)(A).  *Id.* at 5-6, 9.[4]

### b.  Petitioner's Objection

Petitioner objects to this aspect of the R. & R., arguing that "[t]olling is not at issue" because he is contending that the actual-innocence equitable *exception* to the federal habeas statute of limitations applies, rather than seeking equitable *tolling* of that statute of limitations.  Pet'r's Obj. at 4.

---

[3] As noted above, Petitioner filed a motion for judicial review under title 22, section 982a of the Oklahoma Statutes on March 12, 2003; the trial court denied the motion the following day.  While such a judicial-review motion is not part of the direct review process under Oklahoma law, whether such "a motion for judicial review under § 982a can ever lead to tolling . . . under § 2244(d)(2) is an unresolved issue" in the Tenth Circuit.  *Davis*, 2024 WL 140026, at *7 (internal quotation marks omitted); *see id.* at *5; R. & R. at 5 n.4. The Court need not decide whether the pendency of Petitioner's motion statutorily tolled the one-year habeas limitation period, as even assuming § 2244(d)(2) tolling applies, the extension of this period by two days would not materially affect the timeliness analysis.

[4] The R. & R. incorrectly states in several places that the federal habeas Petition, rather than the state-court application for postconviction relief, was filed in 2013.  *See* R. & R. at 6, 9.  This scrivener's error is not material to the R. & R.'s analysis.

The undersigned discerns no error by the magistrate judge. The § 2244(d)(2) statutory tolling discussed by Judge Stephens is a distinct concept from both equitable tolling (which Petitioner did not raise) and the actual-innocence exception (which is addressed in depth elsewhere in the R. & R.). *See Davis*, 2024 WL 140026, at *4-8; *Fontenot*, 4 F.4th at 1028-30. This objection is overruled. Although Petitioner argues for the applicability of § 2244(d)(1)(D) as explained below, he does not challenge the magistrate judge's findings in applying § 2244(d)(1)(A), and the undersigned agrees that the Petition is untimely filed pursuant to that subsection. *See* R. & R. at 4-6, 9.

### 2. *28 U.S.C. § 2244(d)(1)(D)*

#### a. *The Report and Recommendation*

The R. & R. additionally considered whether the timeliness of the Petition should instead be determined by reference to 28 U.S.C. § 2244(d)(1)(D), pursuant to which the one-year limitation period for filing a § 2254 petition runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Section 2244(d)(1)(D)'s requirement of "due diligence" is "an objective standard that refers to when a [petitioner] could have discovered the pertinent facts, not when [he] actually discovered them." *Madrid v. Wilson*, 590 F. App'x 773, 776 (10th Cir. 2014) (internal quotation marks omitted).

Judge Stephens first construed Petitioner's position as arguing that the "factual predicate" of his habeas claims is the medical community's increasing rejection of the diagnosis of "shaken baby syndrome." *See* R. & R. at 3, 6-7; *see also* Pet. at 11-16. Citing,

among other things, the 2013 testimony of Dr. Ofori, in which Dr. Ofori opined that "by 2001, 2002," "most people doubt[ed] it was a reasonable medical diagnosis for most of these children," Judge Stephens found "that medical opinions disputing the diagnosis of shaken baby syndrome were available by 2002." Pet. Ex. 1, Nov. 18, 2013 Hr'g Tr. 13:24-14:1 (Doc. No. 1-1, at 6-29); R. & R. at 7. Accordingly, the R. & R. concluded that this factual predicate could have been discovered "through the exercise of due diligence" prior to December 2, 2002. 28 U.S.C. § 2244(d)(1)(D); R. & R. at 6-9; *see also Shelby v. Cain*, No. 21-CV-406, 2023 WL 2567370, at *3 (S.D. Miss. Feb. 7, 2023), *adopted*, 2023 WL 2563229 (S.D. Miss. Mar. 17, 2023).

Judge Stephens alternatively considered Petitioner's argument as one that the substance of Dr. Ofori's own opinion is the factual predicate for the habeas claims. *See* R. & R. at 3, 8; *see also* Pet. at 11-16. In so doing, Judge Stephens concluded that, because the records Dr. Ofori relied upon in forming his opinion were available in 2002, and Dr. Ofori testified that he would have reached the same conclusions if he had been presented with those records in 2002, this factual predicate likewise was available to Petitioner prior to December 2, 2002. *See id.* at 8-9.

Noting that the one-year limitations period "run[s] from the latest of" "the applicable triggers under 28 U.S.C. § 2244(d)(1)," the R. & R. concluded that December 2, 2002—the date that the judgment became final under § 2244(d)(1)(A), as explained above—was later than the date upon which either of the possible § 2244(d)(1)(D) factual predicates could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1); *see* R. & R. at 9. Accordingly, the magistrate judge concluded that the timeliness of the Petition

should be considered by reference to § 2244(d)(1)(A) rather than to § 2244(d)(1)(D), and thereby found to be untimely.  R. & R. at 9.

### b. Petitioner's Objection

Petitioner objects to the R. & R.'s application of § 2244(d)(1)(D).  First, Petitioner argues that the R. & R. erred in considering his due diligence given Petitioner's assertion of the actual-innocence equitable exception.  *See* Pet'r's Obj. at 5.  The undersigned has considered the substance of this objection in connection with the discussion of actual innocence *infra*.  *See McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (noting that courts may consider a petitioner's diligence "as part of the assessment of whether actual innocence has been convincingly shown").

Next, Petitioner argues that, even assuming due diligence should be evaluated, the magistrate judge did not apply the proper standards in doing so.  *See* Pet'r's Obj. at 5-8.  The undersigned has considered this aspect of the R. & R.'s application of § 2244(d)(1)(D) de novo.

Having conducted this de novo review, the undersigned concludes that it need not be decided whether prior to December 2002 Petitioner, through the exercise of due diligence, could have discovered the changing views of medical personnel or obtained an identical medical opinion to that later issued by Dr. Ofori.  Nor does the undersigned need to decide whether either of these possibilities could constitute a "factual predicate" for Petitioner's habeas claims.  Making such decisions is unnecessary because, even giving Petitioner the greatest possible benefit of the doubt by, first, applying § 2244(d)(1)(D)

rather than § 2244(d)(1)(A) and, second, using the latest start date reasonably supported by the record, as well as statutory tolling, the Petition would still be untimely filed.

The record reflects that the written opinion Dr. Ofori provided for Petitioner's defense was authored on July 9, 2012.  *See* Trial Ct. Order of Sept. 24, 2021, at 3.  On August 28, 2012, Petitioner signed under sworn oath that he had read his application for postconviction relief—which discussed Dr. Ofori's written opinion and attached a copy as an exhibit—and that the application's contents were "true to the best of his knowledge and belief."  Resp't's Ex. 4, Pet'r's Postconviction Appl. at 2-3, 5 (Doc. No. 11-4); *see also* Resp't's Br. at 9 n.2, 18.  Accordingly, the undersigned finds for present purposes that August 28, 2012, is "the date on which the factual predicate" of Dr. Ofori's written medical opinion was discovered by Petitioner.  28 U.S.C. § 2244(d)(1)(D).

Continuing from that premise, Petitioner's one-year period of limitations began to run the next day: August 29, 2012.  *See id.*; *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011).  The limitations period then ran for 238 days, when it was statutorily tolled by the filing of Petitioner's Application for Postconviction Relief on April 24, 2013.  *See* Pet'r's Postconviction Appl. at 1; 28 U.S.C. § 2244(d)(2).  Assuming without deciding that the deadline was then statutorily tolled during the entire pendency of Petitioner's state-court postconviction review, it remained tolled until the OCCA issued its decision affirming the trial court's denial of relief on June 2, 2023.  *See* 28 U.S.C. § 2244(d)(2); Pet.

Ex. 1, OCCA Order at 1-3; *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).[5]  The

remaining 127 days began to run the next day, June 3, 2023, and expired on or about

October 10, 2023.  *See* 28 U.S.C. § 2244(d)(1);  Fed. R. Civ. P. 6(a)(1),  81(a)(3).[6]

The instant Petition was not filed until May 24, 2024.  Therefore, even if §

2244(d)(1)(D) were to apply, this habeas action was initiated more than six months past

the expiration of the statutory deadline.  It follows that, under either subsection (D) or

subsection (A), the Petition is untimely brought and subject to dismissal, absent equitable

tolling (which Petitioner does not assert) or an exception to the one-year limitations period.

*See* U.S.C. § 2244(d)(1); *Jenkins v. Crow*, 820 F. App'x 773, 777-78 (10th Cir. 2020)

("[W]hen a habeas petition is untimely, courts generally dismiss it.").

### B.  Actual Innocence

#### 1.  The Actual-Innocence Exception

"[A]ctual innocence, if proved," is an "equitable exception" that

"serves as a gateway through which a petitioner may pass" when otherwise impeded by a

procedural bar or by "expiration of the statute of limitations."  *McQuiggin*, 569 U.S. at 386,

392 (emphasis omitted).

> In other words, a credible showing of actual innocence may allow a prisoner
> to pursue his constitutional claims . . . on the merits notwithstanding the
> existence of a procedural bar to relief.  This rule, or fundamental miscarriage

---

[5] Respondent argues that only certain portions of the April 24, 2013 to June 2, 2023 period
would be subject to statutory tolling.  *See* Resp't Br. at 18-20 (citing *Gibson v. Klinger*,
232 F.3d 799 (10th Cir. 2000)).

[6] Although Petitioner filed a petition for writ of certiorari in the U.S. Supreme Court after
the OCCA issued its decision, this filing did not toll the habeas limitations period.  *See*
*Lawrence v. Florida*, 549 U.S. 327, 332 (2007); *see also* Resp't Br. at 20.

of justice exception, is grounded in the "equitable discretion" of habeas
courts to see that federal constitutional errors do not result in the
incarceration of innocent persons.

*Id.* at 392 (internal quotation marks omitted); *see also Fontenot*, 4 F.4th at 1028-31.

"[T]enable actual-innocence gateway pleas are rare," however: "A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (alteration and internal quotation marks omitted). This standard "is demanding and seldom met." *Id.* (internal quotation marks omitted).

The gateway should open only when a petition presents "evidence of
innocence so strong that a court cannot have confidence in the outcome of
the trial unless the court is also satisfied that the trial was free of nonharmless
constitutional error.

*Id.* at 401 (internal quotation marks omitted); *accord Murray v. Carrier*, 477 U.S. 478, 496 (1986) (explaining that such an exception may be applied only "in an extraordinary case" "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").

### 2. The Report and Recommendation and Petitioner's Objections

Petitioner argues that expiration of the one-year limitation period of 28 U.S.C. § 2244(d)(1) should not prevent the Court's consideration of his habeas claims because he has made "a convincing showing of actual innocence." *McQuiggin*, 569 U.S. at 386; *see* Pet. at 1, 11; Pet'r's Resp. at 1-14.

In the R. & R., Judge Stephens agreed with Petitioner that Dr. Ofori's medical opinion constitutes "new evidence" "'that was not presented at trial.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). *See* R. & R. at 10; *Fontenot*, 4 F.4th at 1032-33 (adopting view that "new reliable evidence" encompasses "newly presented" evidence).

The magistrate judge disagreed, however, with Petitioner's contentions that Dr. Ofori's opinion was "reliable evidence" and that, in light of the opinion, "it is more likely than not that no reasonable juror would have found [P]etitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 537 (internal quotation marks omitted); *see* R. & R. at 11-18; *see also Schlup*, 547 U.S. at 324 (defining "new reliable evidence" to include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). Stated differently, the magistrate judge found that Petitioner had not shown that "this is the rare case where—had the jury heard all the conflicting testimony—it is more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt." *House*, 547 U.S. at 554. The R. & R. therefore recommended that the Petition be dismissed.

### a. Petitioner's Guilty Plea

First, Judge Stephens concluded that Petitioner's plea of guilty to first-degree manslaughter undermines his claim of actual innocence. *See* R. & R. at 11-12. The R. & R. explained that evidence of Petitioner's guilt includes not only the plea itself, but also his admission that he "shook D.S. causing an injury from which he died." Resp't's Ex. 2, Pet'r's Plea of Guilty at 3 (Doc. No. 11-2); *see* R. & R. at 11. In addition, the trial court

found that Petitioner's plea was knowingly and voluntarily entered and supported by a factual basis. *See* Pet'r's Plea of Guilty at 4.

The Tenth Circuit has explained that "actual innocence claims are 'rarely successful,'" "particularly . . . in cases . . . where [the petitioner] knowingly and voluntarily pled guilty." *United States v. McAbee*, 685 F. App'x 682, 684 (10th Cir. 2017) (quoting *Schlup*, 513 U.S. at 324). And a habeas court "may take into account the fact that the petitioner's conviction was based on a guilty plea predicated on the petitioner's representations of competence and voluntariness, and findings by the court." *O'Bryant v. Oklahoma*, 568 F. App'x 632, 637 (10th Cir. 2014). "[A] petitioner invoking actual innocence as to a guilty plea still has to prove his innocence of the charge to which he pleaded guilty." *Taylor v. Powell*, 7 F.4th 920, 933 (10th Cir. 2021); *see also Goosby v. Trammell*, 515 F. App'x 776, 777 (10th Cir. 2013).

Petitioner objects, arguing that his guilty plea was not "intelligent" because he entered that plea unaware of "relevant circumstances"—i.e., the information found by Dr. Ofori in the medical records "that create[d] a reasonable doubt that [Petitioner's] conduct caused injury or 'head trauma' to D.S. that resulted in his death." Pet'r's Obj. at 10. Pursuant to governing authority, "[a] plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). But contrary to Petitioner's suggestion, a knowing and intelligent plea does not require that the defendant be aware of every potential conclusion to be drawn from the state's evidence. Rather, "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice

among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks omitted)).

Relevant here, a defendant knowingly and intelligently pleads guilty if he understands the plea's "direct consequences," even if the defendant does not also "understand every collateral consequence of the plea." *United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002). Petitioner's alleged lack of awareness as to differing conclusions that could be drawn from medical records does not evince any lack of "a full understanding of what the plea connotes and of its consequences." *Id.* (internal quotation marks omitted). There being no showing that Petitioner's guilty plea was not intelligently entered, the undersigned discerns no error in the magistrate judge's consideration of that plea in determining whether Petitioner has satisfied the actual-innocence standard. This objection is overruled.

### b. Petitioner's Newly Presented Evidence

The R. & R. explains that Petitioner characterizes his new evidence as follows:

> Petitioner relies on Dr. Ofori's opinion that the doctors who saw D.S. after his injury had a "general working diagnosis" of shaken baby syndrome, a diagnosis Dr. Ofori refuted, as well as Dr. Ofori's conclusion that he "categorically disagreed with the opinion of the state forensic pathologist . . . that the cause of [D.S.'s] death was 'head trauma.'" Pet. at 13-14 (quoting Doc. 1-1 at 45, 47).

R. & R. at 12-13 (alteration and omission in original). The R. & R. finds, however:

> At most, Petitioner has established that Dr. Ofori disagrees with the idea that D.S. died because of being shaken by Petitioner. *See* Doc. 1-1 at 13-15, 22, 39-40, 42-46 (testifying that, in his opinion, the autopsy report did not support a diagnosis of shaken baby syndrome); 16-17 (testifying that, in his opinion, injuries reflected on the autopsy report could have come from attempts to resuscitate D.S.); 17 (testifying that, in his opinion, injuries

> reflected on the autopsy report would not result from being shaken); 18, 46 (testifying that, in his opinion, Petitioner's admitted actions could not have caused D.S.'s death); 18-21, 38, 40-41 (testifying that acceptance by the medical community of shaken baby syndrome has changed).

*Id.* at 13; *see also id.* at 13 n.5 ("Petitioner argues that Dr. Ofori disagreed with the opinion of the state forensic pathologist that the cause of D.S.'s death was head trauma. Dr. Ofori's testimony, however, is somewhat inconsistent on that topic. The undersigned finds Dr. Ofori's testimony more consistent regarding his disagreement with the idea that D.S. died as a result of being shaken by Petitioner." (citations omitted)).

Petitioner does not specifically object to this aspect of the R. & R., and, having reviewed the relevant record, the undersigned finds that the magistrate judge accurately summarized the substance of the opinions and conclusions offered by Dr. Ofori, as well as Petitioner's characterization of those opinions and conclusions. *See* Nov. 18, 2013 Hr'g Tr. 3:13-17:24; Pet. Ex. 1, Aug. 16, 2021 Hr'g Tr. 7:9-23:12 (Doc. No. 1-1).

Next, the R. & R. considered Petitioner's new evidence and found that Petitioner had not met his burden to establish that he is actually innocent, as required for his federal habeas claims to proceed. *See* R. & R. at 12-18. Petitioner objects that the magistrate judge erred in his analysis of the impact of the new evidence and failed to properly consider Dr. Ofori's opinions as part of a "holistic judgment" of the evidence in "mak[ing] a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538-39 (internal quotation marks omitted); *see* Pet'r's Obj. at 15-18.

Having considered this aspect of the R. & R. de novo, the undersigned concurs with its findings. The "likely effect" of Dr. Ofori's disagreement with the State's theory that

D.S. died as a result of being shaken by Petitioner, even coupled with the physician's testimony as to the diminishing acceptance of the diagnosis of shaken baby syndrome, would have been, at most, a "battle of the experts." *House*, 547 U.S. at 539; *Shelby v. Cain*, No. 21-CV-406, 2023 WL 2567370, at *5 (S.D. Miss. Feb. 7, 2023) (R. & R.), *adopted*, 2023 WL 2563228 (S.D. Miss. Mar. 17, 2023), *certificate of appealability denied*, No. 23-60178, 2023 WL 11015614 (5th Cir. Aug. 23, 2023).  "[N]umerous courts have recognized that a diagnosis of Shaken Baby Syndrome is a matter of debate and presents a question of credibility." *Shelby*, 2023 WL 2563229, at *7 (citing cases); *see, e.g.*, *Foster v. Oregon*, No. 06-689, 2012 WL 3776471, at *9 (D. Or. Mar. 20, 2012) (R. & R.), *adopted*, 2012 WL 3763543 (D. Or. Aug. 29, 2012), *aff'd*, 587 F. App'x 356 (9th Cir. 2014); *see also Gimenez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016) (rejecting claim of deprivation of due process due to the state's introduction of testimony regarding a discredited theory of shaken baby syndrome where the petitioner's "new scientific evidence" "reveal[ed] not so much a repudiation of" the theory as "a vigorous debate about its validity within the scientific community").  The Court "cannot say that a reasonable jury would credit only" Dr. Ofori's testimony, if presented.  *Parnell v. White*, No. 23-5103, 2024 WL 4198643, at *3 (10th Cir. Sept. 16, 2024); *cf. Moore v. White*, No. CIV-09-985-G, 2023 WL 5918318, at *1-2 (W.D. Okla. Sept. 11, 2023) (noting the "substantial" evidence supporting application of the actual-innocence exception), *appeal docketed*, No. 23-6133 (10th Cir. Sept. 14, 2023).

        For these reasons, Petitioner's new evidence does not show he "committed no crime" or "that it is more likely than not that no reasonable juror would have convicted him" on the manslaughter charge for the death of D.S.  *McQuiggin*, 569 U.S. at 386; *Schlup*,

513 U.S. at 327.   Accordingly, Petitioner has failed to show that he is entitled to consideration of his untimely constitutional claims by this Court pursuant to the actual-innocence equitable exception.  *See McQuiggin*, 569 U.S. at 386.

CONCLUSION

IT IS THEREFORE ORDERED that the Report and Recommendation (Doc. No. 13) is ADOPTED as modified herein.  Respondent's Motion to Dismiss (Doc. No. 10) is GRANTED.  The Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED without prejudice.  A separate judgment shall be entered.

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to a petitioner.  A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Further, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

Upon review, the Court concludes that the requisite standard is not met in this case.

Thus, a certificate of appealability is DENIED.

IT IS SO ORDERED this 15th day of September, 2025.

CHARLES B. GOODWIN
United States District Judge